**UNITED STATES of America**

v.

**Ryan CAMBRELEN, Joel Vasquez, Jose Rivera Eddie Brown, Jesus Manuel Romero Colon, Ottoniel Cambrelen, Defendants.**

**No. CR 96–1044(S–2).**

United States District Court, E.D. New York.

Aug. 27, 1998.

Zachary W. Carter, United States Attorney, Eastern District of New York, Brooklyn, NY (Timothy Macht, John Caruso, Assistant United States Attorneys, of counsel), for Plaintiff.

Philip Katowitz, New York City, for Defendant Ryan Cambrelen.

Albert J. Brackley, Brooklyn, NY, for Defendant Joel Vasquez.

Scott Yale Auster, Carmel, NY, for Defendant Jose Rivera.

Neil Checkman, New York City, for Defendant Eddie Brown.

Kevin J. Keating, Garden City, NY, for Defendant Jesus Colon.

David G. Secular, New York City, for Defendant Ottoniel Cambrelen.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

The six defendants in this case have moved to set aside the guilty verdict. Five counts of the superseding indictment were before the jury: (1) conspiracy to possess cocaine with intent to distribute it, (2) conspiracy to commit robberies affecting interstate commerce, (3) attempt to possess cocaine with intent to distribute it, (4) carrying and using firearms in relation to the offenses described in Counts One and Two, (5) carrying firearms in relation to the offense described in Count Three.

The jury found all six defendants guilty on Counts Three and Five, and defendants Ryan Cambrelen, Joel Vasquez, Jose Rivera, and Eddie Brown, but not defendants Jesus Colon and Ottoniel Cambrelen, guilty on Counts One, Two, and Four.

### I

The evidence showed, in substance, the following. All the defendants except Colon and Ottoniel Cambrelen participated during 1994 through 1996 in various robberies in New York City, primarily of apartments where they expected to find drugs. In addi-

tion, in October 1996 all the defendants attempted to rob a warehouse they had been told contained cocaine.

On October 29, 1996 two confidential informants posing as drug dealers met with defendants Ryan Cambrelen and Jose Rivera. The meeting was captured on a videotape played for the jury. The videotape showed the informants telling the two defendants that some 70 kilograms of cocaine would arrive in New York shortly, that the informants would alert the defendants as to when the drugs would arrive and where they would be stashed, and that the defendants could then enter the stash location (which in fact was an undercover warehouse) and rob the drugs. The two defendants voiced their readiness to undertake the crime and agreed to bring weapons and other men to assist.

On November 8, 1996, one of the confidential informants had a second meeting with Ryan Cambrelen and Rivera, a meeting also recorded on a videotape played at trial. At the meeting the informant said that the cocaine would arrive early the next morning, that there might be one or more persons inside the warehouse, that he did not know if weapons would be there, and that he would beep Ryan Cambrelen at 4:30 A.M. Ryan Cambrelen, and Rivera said they would go prepare and would have six persons to carry out the robbery.

On the morning of November 9, 1996 one of the confidential informants met Ryan Cambrelen and gave him a key to the warehouse. The informant had been instructed to tell Ryan Cambrelen that no one was inside the warehouse at that time.

In the meantime the government agents had placed in the warehouse five kilograms of real cocaine and about 65 kilograms of fake cocaine, and had installed video cameras both inside and outside the warehouse.

Later that morning the six defendants arrived at the warehouse, three in a van and three in a car. Ryan Cambrelen and Brown went inside. The other four defendants remained in the van and the car. The videotapes show Ryan Cambrelen and Brown beginning to place loose kilogram packages of fake cocaine in boxes while the agents ar-rived on the scene and soon arrested Ryan Cambrelen and Brown inside the warehouse and Rivera and Colon outside. Vasquez and Ottoniel Cambrelen sped off in the van but were arrested after a chase.

All the defendants have moved for a new trial because the court received in evidence redacted statements by Vasquez and Brown. The defendants, citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), claim a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. Rivera, represented by new counsel, says also that he is entitled to a new trial because his trial counsel was ineffective. In addition Colon and Ottoniel Cambrelen move to dismiss Count Five of the indictment on which the jury found them guilty of carrying firearms. They claim the evidence as to carrying was insufficient.

II

The Sixth Amendment to the Constitution of the United States provides in pertinent part that an accused in a criminal prosecution "shall enjoy the right" to a trial by jury and "to be confronted with the witnesses against him," thereby assuring the accused the opportunity to cross-examine.

In *Bruton* the Supreme Court of the United States considered a case involving a joint trial of two defendants accused of participating in the same crime. The trial judge admitted one defendant's confession naming and incriminating the other. The judge told the jury that it could consider the confession only against the defendant who made it and not against the co-defendant. The Supreme Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining" the co-defendant's guilt, admission of the confession violated the co-defendant's "right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." 391 U.S. at 126, 88 S.Ct. at 1622.

*Bruton* was distinguished by the Supreme Court in *Richardson v. Marsh,* 481 U.S. 200, 208, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987). In that case a nontestifying defen-

dant's confession did not incriminate the codefendant "on its face" but did so "only when linked with evidence introduced later at trial." *Id.* The Court held that admission of such a confession did not violate the Confrontation Clause provided the trial judge gave a proper limiting instruction and the confession was redacted to eliminate the codefendant's name and any reference to her existence. *See id.* 481 U.S. at 211, 107 S.Ct. at 1709.

In *Gray v. Maryland,* — U.S. —, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), decided after the jury verdict in this case, the Supreme Court considered again the *Bruton* rule. The evidence in *Gray* showed that defendant Anthony Bell gave a confession stating that he (Bell), Kevin Gray, and Jacquin Vanlandingham had participated in a beating causing the victim's death. After Vanlandingham died, a grand jury indicted Bell and Gray for murder.

At the joint trial the judge admitted Bell's redacted confession, which a detective read to the jury, stating the word "deleted" or "deletion" whenever Gray's or Vanlandingham's name had appeared. A written copy of the confession was admitted with those two names deleted, leaving in their place blank white spaces separated by commas. The trial judge charged the jury that it could consider the confession only against Bell and not against Gray. The jury found both defendants guilty.

The Supreme Court held that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration" leave statements that "so closely resemble *Bruton*'s unredacted statements" that the law requires the same result. — U.S. at —, 118 S.Ct. at 1155.

*Bruton* recognizes that, while in various circumstances a jury can and will follow the judge's limiting instructions, it is fatuous to suppose that a jury will be at all likely to disregard a codefendant's statement incriminating to and naming a fellow defendant. *See* 391 U.S. at 135–36, 88 S.Ct. at 1627–28. The distinction drawn in *Richardson* was that because the jury could conclude that the statement referred to the codefendant only by "inference" from other evidence, the

judge's instruction "may well be successful in dissuading the jury from entering onto the path of inference," and "there does not exist the overwhelming probability of [the jurors'] inability" to obey the instruction. 481 U.S. at 208, 107 S.Ct. at 1708.

In *Gray* the Supreme Court concluded that *Richardson* did not control because "inference pure and simple cannot make the critical difference." — U.S. at —, 118 S. Ct. at 1156. It depends on the kind of inference.

The inference in *Gray* was more powerful than any that could be drawn in *Richardson,* where the codefendant's statement gave no indication on its face that it might refer to another defendant. In *Gray* (1) the redacted confession referred directly to the existence of another perpetrator, (2) the jury would be likely to realize immediately that a redacted confession replacing a name with an obvious blank space or a word such as "deleted" referred to the defendant sitting with defense counsel, and (3) the obvious deletion was likely to call the jurors' attention to the removed name. *See* — U.S. at —, 118 S.Ct. at 1155.

It is true that in *Gray* the jury had to draw an inference from other evidence to link the statement in the confession to the defendant. But statements redacted with blanks or the word "deleted" refer directly to someone, and the most likely person to be referred to is the defendant at the defense table. As the Court said, the statements so redacted "involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." — U.S. at —, 118 S.Ct. at 1157.

■ In the present case this court admitted the confession of two defendants, Vasquez and Brown. Both confessions were redacted so as to replace the names of the codefendants with references to "guy," "guys," or "the guys." The redacted confessions contained no blank spaces. Both were admitted in neat, typewritten form so as to disguise the identity of the defendants and the fact of alteration.

The confession of Vasquez describes some of the calls and meetings of the "guys" prior

to the attempted robbery of the warehouse. The confession also refers to the arrival of "guys" at the warehouse, three in a van and three in a car. Brown's confession, in substance, describes that he met "the other guys" and that three "guys" got in a van and he and "two guys" got in car and later arrived at the "location."

This court holds that *Gray* does not require the exclusion of these documents. The instructions to the jury were that each statement could be considered only against the defendant who made it and not against anyone else. The documents had no blank spaces and no facial indication to suggest that they referred to the other defendants or had been redacted or altered. Had the confessions been "the very first item introduced at trial," *id.*, the jurors would have been hardly likely, in the light of the court's limiting instructions, to have considered the confessions as incriminating the other defendants. Until other evidence was admitted— for example, the videotape of persons arriving at the warehouse—the jurors would have had a dubious basis, certainly not an "overwhelming" basis, to infer that "guys" referred to the other defendants.

■ In any event, even if admission of the confessions was error, the error was harmless beyond a reasonable doubt. The Supreme Court has held that courts should consider whether the admission of a statement violative of *Bruton* is harmless error. *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Vasquez and Brown cannot claim prejudice from the admission of their own statements, and their assertions of prejudice from the statement of their co-defendant is implausible. Both statements say, in substance, that they met with other "guys" before the attempted robbery and went to the location, three in one vehicle and three in another. Vasquez's statement is the more extensive, giving details such as the fact that the vehicles contained a "vest" and weapons. But these physical facts were otherwise fully established at the trial by unrefuted testimony.

As to the other defendants, the only other fact of significance made in the statements was that the "guys" met before going to the "location." But since the videotape shows the six defendants arriving together at the warehouse, the jury undoubtedly inferred from that fact that they had agreed to come together.

The motion for a new trial on the ground that *Bruton* was violated will be denied.

### III

■ The argument by Colon and Ottoniel Cambrelen that the evidence was insufficient to prove that they "carried" firearms "during and relation to" the drug trafficking crime alleged under 18 U.S.C. § 924(c)(1) is based on the contention that they had no "ready access" to the guns or even knew that the guns were in the vehicles. While the United States Court of Appeals for the Second Circuit has limited the scope of the statute to require ready access, *United States v. Giraldo*, 80 F.3d 667 (2d Cir.1996), the Supreme Court has recently rejected such a limitation. *Muscarello v. United States*, —— U.S. ——, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998).

The jury could properly infer that both Colon, who waited outside the warehouse with Rivera, and Ottoniel Cambrelen, the brother of Ryan Cambrelen, knew that the vehicles in which they rode carried firearms. There was evidence that the group of defendants kept members as backups outside the locations they planned to rob and had guns in traps available if needed. Moreover, the evidence showed that there was one gun for each of the six defendants who arrived at the warehouse. The jury could fairly infer Colon and Ottoniel Cambrelen knew that they were there for a purpose and that guns were there for them to use if the need arose.

Brown argues that he did not carry a gun "during and in relation to" the crime of drug trafficking within the meaning of 18 U.S.C. § 924(c)(1), because he did not bring a gun into the warehouse but left it in the vehicle. This argument also was rejected in *Muscarello*. In that case the defendants placed guns in a bag in the trunk of a car. They then drove to a proposed drug sale site where they intended to steal the drugs.

They were stopped by agents at the scene, and the agents found the guns inside the trunk. The Supreme Court held that the defendants had carried the guns "during and in relation" to the drug trafficking crime. —— U.S. at ——, 118 S.Ct. at 1919.

Defendants in the present case were charged with a conspiracy and an attempt. They planned to steal the drugs. Plainly, as in *Muscarello*, they brought such guns as they thought might be useful to effectuate their plan.

All the defendants were properly found guilty of carrying guns.

## IV

■  The argument that Rivera was denied effective counsel gives this court pause. But after reconsideration of the entire record the court concludes that counsel's performance met the minimum standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that there is no reasonable probability that in the absence of the deficiencies now claimed by Rivera the outcome would have been different. *See id.* 466 U.S. at 695, 104 S.Ct. at 2068–69.

Rivera now says, "I believe that if I had competent counsel to represent me at the trial of this matter, that I would have been able to argue the defense of my case before the jury and that the verdict rendered by the jury would have been different."

The evidence against Rivera was convincing. The videotapes of two extensive meetings showed him actively participating with Ryan Cambrelen in the detailed planning of the warehouse robbery and assuring the informants that the group would be prepared for violence at the warehouse. The videotape also showed Rivera with three others waiting outside the warehouse.

There was testimony showing that Rivera committed three robberies in New York City prior to the attempted warehouse robbery. The first of these he committed with Ryan Cambrelen and Brown, the second with Ryan Cambrelen, Brown and Vasquez, and the third with Ryan Cambrelen and Brown. Rivera's close relationship with these three

defendants was further illustrated by what Rivera said in the two video taped meetings with the informants.

The main witness who testified to the three New York City robberies, Luis Castellano, was a participant in each. Counsel for Ryan Cambrelen, Brown, and Vasquez cross-examined Castellano at length, focusing largely on his previous crimes and lies, the violent acts he had committed during the robberies, his prior drug dealings, and his cooperation agreement with the government.

Counsel for Rivera did not cross-examine. Rivera does not suggest any area of questioning bearing on Castellano's credibility that the other three counsel left untouched. As the court said in *United States v. Bari*, 750 F.2d 1169, 1182 (2d Cir.1984), *cert. denied sub nom, Benfield v. United States*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985), further cross-examination might well have been counter productive.

Rivera says he told his trial counsel of three potential witnesses who could have assisted in further impeaching Castellano by showing that he committed robberies and violent acts in addition to those to which he admitted. Counsel did not call these alleged witnesses. Rivera gives hardly any specifics as to what these persons would have said. New counsel does not suggest any reason why whatever they might have said, if admitted in evidence, would have made a difference in the jury's assessment of Castellano's testimony. See *Bari*, 750 F.2d at 1182.

Rivera complains also that his counsel's summation was too short. Counsel argued that Castellano was unbelievable, "a teenager from hell," in short "a piece of garbage." Counsel also argued that Rivera had been entrapped, that there was no evidence he had any record of violence, killing, and mugging, and that he was a poor slum kid who had been told to go to the warehouse.

Other counsel argued vigorously that Castellano's testimony was incredible and that the defendants had been entrapped. They did not persuade the jury. There is no likelihood that a longer summation on Rivera's behalf would have had any greater success. It is hard to fault trial counsel for declining

to rehearse the factors so exhaustively argued by other counsel as to Castellano's credibility.

Rivera's counsel on appeal has not suggested anything further that trial counsel could have done that would have had any reasonable chance of obtaining an acquittal.

Finally, Rivera adds that trial counsel allegedly failed adequately to explain the advantages and disadvantages of accepting the offer of a plea. Rivera admittedly rejected the offer despite counsel's "pressure" to accept. This is thus not a case where trial counsel gave no "advice or suggestion" as to whether the defendant should accept a plea offer. *Cf. Boria v. Keane,* 99 F.3d 492, 497–98 (2d Cir.1996).

*Strickland* requires that this court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S.Ct. at 2065. The court's "scrutiny of counsel's performance must be highly deferential," and the strong presumption serves to eliminate "the distorting effects of hindsight." *Id.*

Rivera has advanced no good reason why the presumption should not apply.

### V.

The motions by defendants are denied.

So ordered.